IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

|  |  |  |
|---|---|---|
| ERIC HENLEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:12-CV-263 |
| | ) | |
| CITY OF JOHNSON CITY, TENNESSEE | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action came before the court for hearing on July 18, 2012, on plaintiffs' motion for a temporary restraining order [doc. 4]. Plaintiffs seek a temporary restraining order ("TRO") to prevent defendant, Johnson City, Tennessee, from proceeding with the proposed annexation of certain property. On July 1, 2012, plaintiffs filed a complaint pursuant to 42 U.S.C. § 1983 for alleged violation of their rights under the United States Constitution. For the reasons that follow, the motion will be denied in its entirety.

I.

*Background*

According to the pending motion, on May 25, 2012, the City of Johnson City, Tennessee announced its intention to annex certain property in Gray, Tennessee, referred to as the "Bobby Hicks Highway/Airport Road Annexation ("the Annexation"). The complaint

states that plaintiff Eric Henley is a resident of an unincorporated area in Gray, Tennessee and owner of land subject to the Annexation.[1] Henley states that the third and final reading of the Annexation ordinance is expected on July 19, 2012, and that he opposes the Annexation. However, defendant Johnson City's response to plaintiffs' motion states that the ordinance at issue did not pass on the July 5, 2012 reading, so no third reading would take place on July 19, 2012. This fact is verified by the affidavit of Jane Jennings, the Finance Director/City Recorder for Johnson City and was also confirmed at the hearing. Obviously, plaintiffs are no longer in need of the originally alleged emergency relief. The Henley affidavit further states that the annexation statute is ambiguous and contradictory and that he is unable to ascertain the proper procedures to challenge the annexation.

According to the pending motion, the grounds for seeking a TRO are that the Tennessee statutes setting the procedures for contesting annexation, as well as the procedures and burdens of proof to challenge annexation, are ambiguous and contradictory. Therefore, plaintiffs contend they cannot ascertain the proper procedures to challenge annexation. Plaintiffs also contend that the Tennessee statutes governing annexation are unconstitutionally vague and deny plaintiffs due process rights.

---

[1] The motion reflects that all of the plaintiffs have moved for the TRO, although according to the complaint only Henley lives within the area of the subject annexation. The complaint states that the other plaintiffs were subject to the "Gray Suncrest Drive Annexation," which is not referenced in the motion. While the motion is also captioned as a motion for "Preliminary Injunction," no supporting evidence is offered by the other plaintiffs who are subject to the "Gray Suncrest Drive Annexation" ordinance that demonstrates their annexation status and entitlement to extraordinary relief.

2

II.

*Analysis*

In determining whether a plaintiff is entitled to a TRO or other preliminary injunctive relief, the court considers four factors:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*City of Pontiac Retired Emps. Assoc. v. Schimmel*, No. 12-12830, 2012 WL 2532763, at *2 (E.D. Mich. July 2, 2012)(citing *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). However, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). "A temporary restraining order and a preliminary injunction are extraordinary remedies 'which should be granted only if the movant carries his or her burden of proving that the circumstances clearly

3

demand it.'" *Crowder v. Hamilton Cnty. Sheriff's Office*, No. 1:11-cv-306, 2012 WL 1866514, at *5 (E.D. Tenn. May 22, 2012) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)); *see also Tenn. Guardrail, Inc. v. Tenn. Dept. of Transp.*, No. 3:11-cv-01010, 2011 WL 5153086, at *1 (M.D. Tenn. Oct. 28, 2011) ("The temporary restraining order is an "'extraordinary remed[y] which should only be granted if the movant carries his burden of proving that the circumstances clearly demand it.'" (citing *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009)).

**Likelihood of Success on the Merits**

Initially, the court addresses the issues concerning the viability of the State of Tennessee ("the State") as a defendant in this action brought pursuant to 42 U.S.C. § 1983, an issue raised by the State in its response and in a separate motion to dismiss [doc. 10]. Plaintiffs have to demonstrate that this lawsuit can be sustained against the State, but have not done so. "[A] State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Further, the State has certain immunities from suit in federal court, and plaintiffs have not shown any exception to the States's sovereign immunity that would allow this action to proceed against it. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("There are three exceptions to a State's sovereign immunity: (a) the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), applies, and (c) when Congress has properly abrogated a State's immunity."). Thus, the likelihood of maintaining

4

any claims against the State are virtually nonexistent.

While plaintiffs have filed this action pursuant to 42 U.S.C. § 1983 for alleged violation of their rights under the United States Constitution, they have not identified specifically what right or constitutional amendment is allegedly violated by defendants' actions.

Plaintiffs make reference in their briefs to the Fifth Amendment taking clause. However, placing property within a city's boundaries where it will be subject to city taxes is not a taking of property. *Williams v. Nashville*, 15 S.W. 364 (Tenn. 1891). Long ago the Tennessee Supreme Court stated:

> It is contended that this act is void because in conflict with the fifth amendment to the constitution of the United States, which provides that "no person shall be deprived of life, liberty, or property without due process of law, nor shall private property be taken for public use without just compensation;" . . . The extension of corporate limits so as to include additional territory is in no sense an impairment of the owner's liberty, nor is it a taking of private property for public use. . . . Placing property within the corporate limits of a given town or city, where it will be subjected to the additional burden of municipal taxation and supervision, is not a taking of the property at all.

*Id*. at 365. *See also State ex rel Hudson v. City of Chattanooga*, 512 S.W.2d 555 (Tenn. 1974) (superseded by statute on other grounds by *City of Kingsport v. State ex rel. Crown Enterprises, Inc*., 562 S.W.2d 808 (Tenn. 1978); *State ex rel. Balsinger v. Madisonville*, 435 S.W.2d 803 (Tenn. 1968); *Deane Hill Country Club, Inc. v. Knoxville*, 379 F.2d 321 (6th Cir. 1967). Thus, annexing property is not a taking of property.

While plaintiffs also contend in their briefing that they are not making a

5

Fourteenth Amendment violation claim, in the same brief they argue that they are being deprived of their due process rights because of the lack of clarity in the annexation statute. Defendants contend that plaintiffs have no due process claim because they have not identified an underlying property interest protected by the Due Process Clause. "In order to state a substantive due process claim Plaintiff must state facts to show that Defendants interfered with a fundamental right or liberty interest that is accorded special constitutional protection." *Mensah v. Mich. Dep't of Corr.*, No. 10-CV-13233, 2011 WL 4027384, at *6 (E.D. Mich. July 15, 2011) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997)). "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir 2009) (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

In *Hardin County v. City of Adamsville*, No. 02A01-9203-CH-00084, 1993 WL 8377 (Tenn. Ct. App. Jan. 20, 1993), the Tennessee Court of Appeals addressed due process when analyzing the constitutionality of Tenn. Code Ann. § 6-51-102, which appellants contended violated the Fifth, Fourteenth and Fifteenth Amendments to the United States Constitution. The appellants contended that the annexation statutory provision was unconstitutional because it failed to provide them notice of and the right to vote on the proposed annexation. The Court of Appeals stated that "the procedural due process provided to the citizens of a territory that is the subject of a proposed annexation is the right to bring

6

a quo warranto action to contest the validity of the annexation. T.C.A § 6-51-103. This is the process the Tennessee legislature has prescribed" *Id*. at *4. The court further concluded that "annexation statutes do not involve substantive due process rights." *Id*. at *4. The court quoted from the seminal decision in the area, *Hunter v. City of Pittsburg*, 207 U.S. 161 (1907). In *Hunter*, the Supreme Court stated that "annexation by a city or town is purely a state political matter, entirely within the power of the state legislature to regulate. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. . . . All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States." *Id*. at 178-79.

Decisions subsequent to *Hunter* "have made clear, however, that municipal annexations are subject to scrutiny under both the Fifteenth and Fourteenth Amendments to the United States Constitution when that exercise involves the infringement of fundamental rights or the creation of suspect classifications." *Hardin County*, 1993 WL 8377, at *5 (citing *Gomillion v. Lightfoot*, 364 U.S. 339 (1964); *Hayward v. Clay*, 573 F.2d 187, 190 (4th Cir. 1978)).[2] In *Gomillion*, the Supreme Court invalidated an Alabama law that redefined the

---

[2] The court in *Hardin County* noted that "Tennessee courts, following *Hunter*, have stated that, 'in annexation cases there is no equal protection or due process argument that can properly be made when the statute is followed.'" *Hardin County*, 1993 WL 8377, at *5 (citations omitted). With regard to its analysis of § 6-51-102, the court ultimately held that "the Federal Constitution does not
(continued...)

7

municipal limits of Tuskegee and the redefinition was motivated to disenfranchise black citizens. In *Hayward*, the Fourth Circuit held that if an annexation made through a general vote of a city's inhabitants, those inhabiting the proposed annexation must be afforded the right to vote as well. *See also Baldwin v. City of Winston-Salem, N.C.*, 710 F.2d 132, 135 (4th Cir. 1983) ("We think it plain, based on these cases, that the exercise by a state of the discretion accorded to it in structuring its internal political subdivisions is subject to judicial review under the Fourteenth Amendment only where that exercise involves the infringement of fundamental rights or the creation of suspect classifications.") (referring to *Hunter*, *Gomillion*, and *Hayward*). Plaintiffs have not shown in their complaint or moving papers that the annexation statute creates a suspect class or infringes on a fundamental right. No substantive due process claim can be shown.

Plaintiffs, however, argue that the annexation statute provides a property right; thus they can pursue a due process claim. They also continue to represent that they are not challenging the annexation itself but the statutory provisions for contesting the annexation which they claim are vague and contradictory and therefore provide them no guidance. This, plaintiffs contend, states a due process claim. At best this is an attempt to assert a procedural due process claim. Again, the first requisite showing for such a claim is a life, liberty or property interest protected by the Due Process Clause. Plaintiffs' contention that the statute itself makes a property interest is unsupported by any authority and is unavailing.

---

[2](...continued)
afford the appellants the right to vote on or the right to notice of the [City's] proposed annexation." *Id*.

The statutory provisions plaintiffs challenge are procedural in nature, setting forth the steps necessary to contest an annexation. The procedure is through a *quo warranto* action. Tenn. Code Ann. § 6-58-111 or 6-51-103. As the Court noted in *Hardin County*, the *quo warranto* action is the process prescribed by the Tennessee legislature. 1993 WL 8377 at *4. The statute itself does not convey or establish any property rights, but prescribes the procedure provided by the State for judicial review of annexation decisions.[3]

---

[3] Johnson City presumably has an approved growth plan; thus § 6-58-111 would apply to the subject annexation, were it to pass. Section 6-58-11 provides in relevant part:

> (a) . . . Within a municipality's approved urban growth boundaries, a municipality may use any of the methods in chapter 51 of this title to annex territory; provided, that if a quo warranto action is filed to challenge the annexation, the party filing the action has the burden of proving that:
> (1) An annexation ordinance is unreasonable for the overall well-being of the communities involved; or
> (2) The health, safety, and welfare of the citizens and property owners of the municipality and territory will not be materially retarded in the absence of such annexation.
> (b) In any such action, the action shall be tried by the circuit court judge or chancellor without a jury.

Plaintiffs' contention that the different burdens of proof in Tenn. Code Ann. § 6-58-111(a) and § 6-58-103(c) are materially different and irreconcilable is unfounded. These sections have in fact been reconciled and explained by the Tennessee Court of Appeals in *Tipton v. City of Knoxville*, 205 S.W.3d 456 (Tenn. Ct. App. 2006). The court in *Tipton* stated:

> Section 6-58-111 applies to *quo warranto* proceedings contesting an annexation of territory by a municipality within its approved urban growth boundary. When the General Assembly enacted § 6-58-111(a) it created incentives to encourage local governments to develop approved growth plans. Thus, the General Assembly intended for all counties to eventually

(continued...)

The Fourth Circuit in *Barefoot v. City of Wilmington, N.C.*, 37 F. App'x 626 (4th Cir. 2002) also dealt with a due process challenge to an annexation. One of the issues was a contention by the appellants "that the North Carolina provisions for judicial review of annexation decisions deny them procedural due process." *Id*. at 634. The applicable statute provided a "limited right to judicial review of annexation decision[s]." *Id*. The Fourth Circuit held:

> In order to state a procedural due process claim, the Appellants must demonstrate that 'there exists a liberty or property interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation" were

---

[3](...continued)
> develop growth plans with the result that § 6-58-111 would eventually apply to all annexation proceedings. Since the provisions allowed for a period of time for approving growth plans, it followed that some counties would not. Thus, § 6-51-103(a),(c),(d) was retained to govern annexation contests in counties without approved growth plans.
>
> A disjunctive construction of the word "or" in § 6-58-111(a)(1)-(2) does not render §§ 6-58-111 and 6-51-103 irreconcilable because *the burdens of proof established in these statutes are not applied simultaneously. Section 6-58-111(a) applies to annexations of territory within a municipality's approved urban growth boundary and § 6-51-103(a),(c),(d) applies to annexations that occur in counties without an approved growth plan. These sections are reconciled because they apply to different situations, and are not ambiguous*.

*Id*. at 461 (internal citations omitted) (emphasis added). Tennessee case law has explained and reconciled the different burdens of proof in the two statutory provisions. Anyone challenging an annexation in a *quo warranto* proceeding can easily determine the applicable burden of proof by learning whether the subject territory is with an approved urban growth boundary or in a county that is without an approved growth plan.
10

The Fourth Circuit in *Barefoot v. City of Wilmington, N.C.*, 37 F. App'x 626 (4th Cir. 2002) also dealt with a due process challenge to an annexation. One of the issues was a contention by the appellants "that the North Carolina provisions for judicial review of annexation decisions deny them procedural due process." *Id*. at 634. The applicable statute provided a "limited right to judicial review of annexation decision[s]." *Id*. The Fourth Circuit held:

> In order to state a procedural due process claim, the Appellants must demonstrate that 'there exists a liberty or property interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation" were

---

[3](...continued)
> develop growth plans with the result that § 6-58-111 would eventually apply to all annexation proceedings. Since the provisions allowed for a period of time for approving growth plans, it followed that some counties would not. Thus, § 6-51-103(a),(c),(d) was retained to govern annexation contests in counties without approved growth plans.
>
> A disjunctive construction of the word "or" in § 6-58-111(a)(1)-(2) does not render §§ 6-58-111 and 6-51-103 irreconcilable because *the burdens of proof established in these statutes are not applied simultaneously. Section 6-58-111(a) applies to annexations of territory within a municipality's approved urban growth boundary and § 6-51-103(a),(c),(d) applies to annexations that occur in counties without an approved growth plan. These sections are reconciled because they apply to different situations, and are not ambiguous*.

*Id*. at 461 (internal citations omitted) (emphasis added). Tennessee case law has explained and reconciled the different burdens of proof in the two statutory provisions. Anyone challenging an annexation in a *quo warranto* proceeding can easily determine the applicable burden of proof by learning whether the subject territory is with an approved urban growth boundary or in a county that is without an approved growth plan.

> constitutionally deficient." *Ky. Dep't of Corr. v. Thompson*, 490
> U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). The
> Appellants contend that their "fundamental right to vote on
> annexation" is a protected liberty interest. As explained above,
> the Appellants do not have the right to vote on annexation.
> Consequently, the Appellants have been deprived of no
> cognizable liberty interest.

*Id*. The Court also made a cogent observation relevant to this case when it remarked that "the Due Process Clause was not meant to require direct judicial review for every mere *assertion* of the deprivation of a (non-existent) liberty interest." *Id*. at 635 n.5. Plaintiffs herein have not identified a liberty or property interest necessary to establish a procedural due process claim. The statutory procedural process provided by the State is not a liberty or property interest. Accordingly, the court concludes that there is simply no likelihood that plaintiffs would prevail on the merits of this case, and this factor weighs heavily against granting any injunctive relief.

**Irreparable Harm**

The annexation Henley opposes did not pass, and therefore did not go to a third reading. Thus, there is no annexation presently at issue, and it would be speculation at this point to discuss what the City's governing board might decide to do. The other plaintiffs have not presented any showing to document their status as persons in a position to challenge annexation. The fact remains, that should Johnson City again proceed with its annexation plans, the *quo warranto* procedure, that has been used numerous times in the past by persons subject to annexation, is available to plaintiffs. "When a *quo warranto* action is timely filed

11

to challenge an annexation, the effective date of the challenged annexation ordinance is held in abeyance pending the litigation. Moreover, an annexation is not effective or operative until the ordinance is upheld as valid by the presiding court." *City of Knoxville v. Knox County*, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at *3 (Tenn. Ct. App. Feb. 20, 2008) (internal quotation marks and citations omitted). Plaintiffs have not shown irreparable harm. This factor weighs against extra ordinary relief.

### Harm to Others and the Public Interest

Many citizens would be affected by the annexation other than Henley. No doubt there are others who would favor annexation because of the municipal services that annexation brings. There is no showing in the record how others would possibly be affected if Johnson City did not proceed with it annexation plans.

In addition, court decisions have made it clear that annexation is a local matter for states and municipalities. Without sufficient justification, it would not be in the public interest to interfere with the State's annexation procedures or Johnson City's annexation proceedings. This factor also weighs against injunctive relief.

Therefore, plaintiffs have not sustained their burden of "proving that the circumstances clearly demand " the granting of extraordinary relief. *Crowder*, 2012 WL 1866514, at *5. Accordingly, for all of the reasons stated herein, plaintiffs' motion for a TRO and preliminary injunction will be denied in its entirety. An order consistent with this opinion will be entered.

ENTER:

　　　　　s/ Leon Jordan
　　United States District Judge